UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COSTAS PROVISIONS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>COYOTE LOGISTICS, LLC ET AL.,<br><br>Defendants. | No. 1:25-cv-13590-IT |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

HEDGES, M.J.

On November 26, 2025, Plaintiff Costas Provisions Corp. filed a complaint against Defendants Coyote Logistics, LLC; Lineage Logistics, LLC; HH Trucking One, Inc.; and Fast Freight Solutions LLC, alleging breach of contract, breach of the Carmack Amendment of the Interstate Commerce Act (49 U.S.C. § 14706), negligence, and violations of the doctrine of good faith and fair dealing. Docket No. 1. On March 25, 2026, Coyote moved to dismiss the complaint for failure to state a claim. Docket No. 26. Also on March 25, 2026, Lineage moved to dismiss the complaint for insufficient process, lack of personal jurisdiction, improper venue, and failure to state a claim. Docket No. 29. On March 27, 2026, Fast Freight moved to dismiss the complaint for failure to state a claim, lack of personal jurisdiction, and improper venue. Docket No. 37. I held a hearing on the Defendants' motions on July 17, 2026, and took the motions under advisement. Docket No. 60.

For the reasons explained below, I recommend that the District Judge: (1) GRANT Lineage's motion to dismiss (Docket No. 29) for insufficient service of process and lack of

personal jurisdiction; (2) GRANT Fast Freight's motion to dismiss (Docket No. 37) for lack of personal jurisdiction; and (3) GRANT Coyote's motion to dismiss (Docket No. 26) for failure to state a claim.

## I. FACTUAL BACKGROUND[1]

On or about December 7, 2023, Costas (a registered Massachusetts corporation headquartered in Boston), purchased several thousand pounds of steak from John Soules Meat (a Texas-based food supplier). Docket No. 1 ¶¶ 1, 8. Consistent with the purchase agreement, John Soules Meat delivered the steaks to a cold storage facility in Sunnyvale, Texas, which was managed or operated by Lineage (a Texas-based shipping operator). *Id.* ¶¶ 3, 9. To transport the cargo from the Texas facility to cold storage in Massachusetts, Costas retained the services of Coyote (a freight forwarder and shipping broker based in Alpharetta, Georgia). *Id.* ¶¶ 2, 10. Coyote "placed" Costas' shipping contract with Lineage. *Id.* ¶ 11. Coyote or Lineage subsequently retained the services of HH Trucking (a California-based shipping and trucking company) and Fast Freight (a Pennsylvania-based freight forwarder and motor carrier) as motor carriers for the shipments.[2] *Id.* ¶¶ 4–5, 11. On or about December 19, 2023, the first truckload of steaks was lost.[3] *Id.* ¶ 12. Costas believes the steaks, valued at $294,208.04, were stolen. *Id.* ¶¶ 12-13.

On or about January 15, 2024, Costas again sought to transport steak cargo, relying on Coyote, Lineage, HH Trucking, and Fast Freight to handle the shipment. *Id.* ¶ 14. This second

---

[1] These facts are drawn from Costas' complaint.

[2] Based on the complaint, it is not clear whether Lineage or Coyote retained HH Trucking and Fast Freight to transport the steaks.

[3] The complaint also leaves unclear the timeline of when the cargo was lost between its storage in Texas and its planned delivery to Massachusetts.

truckload of steaks was also lost or stolen while in transit. *Id*. Costas alleges the market value of this second lost shipment was $320,859.59. *Id*. ¶ 15.

Local law enforcement in Texas investigated both incidents and determined that the cargo losses occurred while the two truckloads of steak were within the care and custody of the Defendants. *Id*. ¶ 17. Because the seller, John Soules Meat, successfully delivered the steak to the Defendants as shippers, Costas was required to pay John Soules Meat for both lost shipments. *Id*. ¶ 18. Costas filed claims for the cargo losses, but Defendants either rejected the claims or avoided the claim processes entirely. *Id*. ¶ 16. In total, Costas alleges direct cargo damages of $615,067.63, alongside losses from loss of use, procurement costs for replacement products, legal fees, and administrative court costs. *Id*. ¶ 19.

## II. PROCEDURAL HISTORY

On November 26, 2025, Costas filed a complaint against Defendants Coyote, Lineage, HH Trucking, and Fast Freight, alleging breach of contract, breach of the Carmack Amendment, negligence, and violations of the implied covenant of good faith and fair dealing. Docket No. 1. Costas served the summons and complaint upon all four Defendants between February 12 and February 17, 2026. Docket Nos. 8-11. HH Trucking was served on February 17, 2026, making its responsive pleading due by March 10, 2026. Docket No. 8. To date, HH Trucking has not filed an appearance or any responsive pleading in this matter. The remaining Defendants requested extensions of time to respond to the complaint, which I granted. Docket Nos. 14, 20, 21.

On March 25, 2026, Coyote moved to dismiss the complaint for failure to state a claim. Docket No. 26. Coyote argues that the Carmack Amendment claim fails because the complaint alleges Coyote acted as a shipping broker that arranged transportation, rather than a carrier or

freight forwarder. *See* Docket No. 26 at 1, Docket No. 27 at 5-8. Coyote further argues that the state-law contract and negligence claims fail because they are expressly preempted by the Federal Aviation Administration Authorization Act (FAAAA), or alternatively, if Coyote is deemed a carrier or freight forwarder, by the Carmack Amendment. *See* Docket No. 26 at 1-2, Docket No. 27 at 8-13.

Also on March 25, 2026, Lineage moved to dismiss the complaint for insufficient service of process, lack of personal jurisdiction, improper venue, and failure to state a claim. Docket No. 29. Lineage argues that the claims should be dismissed for insufficient process because Costas served a receptionist at Lineage's warehouse in Texas who is not authorized to accept service. *See* Docket No. 29 at 1, Docket No. 30 at 4-5. Lineage further argues that Costas cannot establish personal jurisdiction over Lineage—a Delaware entity with its principal place of business in Michigan—because it has no contacts with Massachusetts arising out of Costas' causes of action. *See* Docket No. 29 at 1, Docket No. 30 at 5-10. Lineage also contends that venue is improper in Massachusetts under both the Carmack Amendment and general venue provisions because the alleged loss or damage occurred after the product left Lineage's warehouse in Texas, but before it reached its destination in Massachusetts. *See* Docket No. 29 at 1, Docket No. 30 at 11-13. Finally, Lineage asserts that the complaint is an impermissible shotgun pleading that lumps all defendants together and consists of threadbare recitations of the causes of action. *See* Docket No. 29 at 2, Docket No. 30 at 13-16.

Lastly, on March 27, 2026, Fast Freight moved to dismiss the complaint. Docket No. 37. Fast Freight argues that the lawsuit should be dismissed because the complaint fails to state a plausible claim for relief against Fast Freight, the state law claims in Counts II and III are

preempted by the Carmack Amendment, Costas has not shown personal jurisdiction exists in Massachusetts, and venue is improper. *See id*. at 1.

On April 8, 2026, Costas filed a Refusal to Consent to Proceed Before a U.S. Magistrate Judge, and the case was reassigned to Judge Talwani. Docket Nos. 40, 43. On April 10, 2026, Judge Talwani referred the case and the three pending motions to dismiss to me for a Report and Recommendation. Docket No. 44. On April 16, 2026, and June 18, 2026, Costas filed oppositions to the motions to dismiss. Docket Nos. 46-49, 55-56.[4] Costas argues that its state-law claims are not preempted, that this Court has personal jurisdiction over the out-of-state entities because the steaks were destined for Massachusetts under the shipping contracts, that service and venue were proper, and that it met the requisite pleading standard and adequately stated a claim. *See* Docket Nos. 47, 49, 56. Defendants filed replies on April 23, 2026, and June 29, 2026. Docket Nos. 51-53, 59. I held a hearing on the Defendants' motions on July 17, 2026, and took the motions under advisement. Docket No. 60.

## III. LEGAL STANDARD

### A. Threshold Procedural Challenges

When a defendant challenges threshold procedural issues like personal jurisdiction, venue, or service of process under Fed. R. Civ. P. 12(b)(2), (3), or (5), the burden shifts to the plaintiff to prove that the selected forum and method of notice are lawful. *See, e.g.*, *Blair v. City*

---

[4] On April 16, 2026, Costas filed a one-page opposition to Fast Freight's motion. Docket No. 50. Fast Freight filed a reply on April 21, 2026, noting that Costas seemed to have omitted a "supporting memorandum of fact and law" from its April 16 filing. Docket No. 51 at 1. On June 15, 2026, I ordered Costas to file the supporting memorandum and show good cause as to why that filing was not previously made, and Costas filed an addendum and supplemental memorandum in opposition to Fast Freight's motion on June 18, 2026. Docket Nos. 54-56. I accepted Costas' late-filed opposition for good cause and permitted Fast Freight to file an amended reply, which it submitted on June 29, 2026. Docket Nos. 58, 59.

*of Worcester*, 522 F.3d 105, 112 (1st Cir. 2008); *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 209 (D. Mass. 2023); *Beck v. Vision Serv. Plan Ins. Co.*, 600 F. Supp. 3d 145, 152 (D. Mass. 2021). Courts may look beyond the pleadings and may freely examine the docket, return-of-service forms, affidavits, and external evidentiary submissions. *Cutler Assoc., Inc. v. Palace Construction, LLC*, 132 F. Supp. 3d. 191, 194 (D. Mass. 2015); *see also Ryan v. Newark Grp. Inc.*, 814 F. Supp. 3d. 24, 36 (D. Mass. 2025) (court can look beyond the pleadings on 12(b)(2)); *Berklee College of Music, Inc. v. Music Industry Educators, Inc.*, 733 F. Supp. 2d 204, 211 n.49 (D. Mass. 2010) (court can look beyond the pleadings on 12(b)(3)). In so doing, however, courts will not accept conclusory allegations or assertions that lack factual support in the record. *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011).

***1. Insufficient Service of Process***

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) challenges the mode or method of service of the summons and complaint. To survive dismissal on this ground, the procedural record must demonstrate strict compliance with Fed. R. Civ. P. 4(m), which mandates service within 90 days of filing.

***2. Lack of Personal Jurisdiction***

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges the Court's authority over the defendant. The Court may use one of three methods to resolve such a motion: the prima facie method, the preponderance method, or the likelihood method. *Doane v. Python Leads, LLC*, No. 1:24-cv-12947-JEK, 2025 WL 3485569, at *3 (D. Mass. Dec. 4, 2025) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016)). "The prima facie method is 'most commonly employed in the early stages of litigation.'" *Id.* (quoting *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997)). Under this standard, the plaintiff must offer

affirmative proof that the assertion of jurisdiction is authorized by the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A § 3, and comports with constitutional due process requirements. *See Lin v. TipRanks, Ltd.*, 19 F.4th 28, 33 (1st Cir. 2021). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." *Sheldon v. DT Swiss AG*, 759 F. Supp. 3d 232, 241 (D. Mass. 2024) (quoting *Lopez v. AngioDynamics, Inc.*, 2021 WL 5040320, at *4 (D. Mass. Oct. 28, 2021) (alterations in original). In employing the prima facie approach, courts accept the plaintiff's "version of genuinely contested facts," but will not credit unsupported or farfetched inferences, and consider the defendant's proffered facts when uncontradicted. *See Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023).

#### *3. Improper Venue*

Fed. R. Civ. P. 12(b)(3) similarly requires the plaintiff to establish the propriety of the chosen judicial district. *Krick*, 695 F. Supp. 3d at 209. In reviewing a challenge for improper venue, courts resolve factual conflicts and draw reasonable inferences in the plaintiff's favor to decide whether to dismiss the case or, in the interest of justice, transfer it under 28 U.S.C. § 1406(a). *Id.* at 209-10.

### B. Failure to State a Claim

Unlike threshold procedural challenges, when a defendant makes a merits-based challenge to a complaint under Fed. R. Civ. P. 12(b)(6), the defendant carries the heavy burden of persuasion. *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 103 (D. Mass. 2014). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the substance of the pleading and requires the Court to determine whether the complaint states a claim for which relief can be granted. *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020).

Reviewing the complaint as a whole, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor, but it will not accept the truth of conclusory legal allegations. *García-Catalán v. United States,* 734 F.3d 100, 102-03 (1st Cir. 2013). Ultimately, to survive a Fed. R. Civ. P. 12(b)(6) motion, the factual allegations must support "the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), while relying strictly on facts and documents that are part of or incorporated into the complaint. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009).[5]

## IV. <u>ANALYSIS</u>

### A. Lineage's Motion to Dismiss (Docket No. 29)

Lineage moves to dismiss the complaint for insufficient service of process under Fed. R. Civ. P. 12(b)(5), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Docket No. 29. Because a federal court should not adjudicate substantive liabilities without valid service of process and proper jurisdiction, I turn first to the threshold procedural challenges.[6]

---

[5] Where appropriate, the court can also consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." *Arturet–Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005); *see also Haley v. City of Boston*, 657 F.3d 39, 44, 46 (1st Cir. 2011).

[6] "Generally, courts must adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case." *Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir 2011); *see also Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 162 n.8 (1st Cir. 2022) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).") (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31(2007)).

### *1. Insufficient Service of Process*

Under Fed. R. Civ. P. 4(h)(1)(B), serving a domestic corporation requires delivering a copy of the summons and the complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Alternatively, an entity may be served according to state law in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). Under the state laws of Massachusetts (the state where the Court is located) and Texas (the state where service was made) service must be made on an officer, managing individual, or someone specifically designated by the entity to receive service on the entity's behalf.[7] *See* Mass. R. Civ. P. 4(d)(2); Mass. Gen. Laws ch. 223 § 37; Tex. Bus. Org. Code §§ 5.201, 5.255.

Costas did not serve an officer or authorized agent of Lineage. Instead, Costas served a receptionist named "Paulina" at a local warehouse facility operated by Lineage in Sunnyvale, Texas. *See* Docket No. 29 at 1; Docket No. 30 at 4-5; Docket No. 30-3 at 1; Docket No. 47 at 4. Lineage's agent for service of process in Texas is Corporations Service Company d/b/a CSC – Lawyers Incorporating Service Company, not the warehouse receptionist at one of its many Texas locations. *See* Docket No. 30-4 at 2. Under Fed. R. Civ. P. 4(h) and the law of the circuit, a receptionist lacks the inherent status or authority to accept service on behalf of a foreign corporation unless the corporation has explicitly designated that individual to do so. *See, e.g., Carey Int'l, Inc. v. Carey Limo Serv. Inc.*, No. 10-cv-12142-MLW, 2011 WL 9819989, at *1-2 (D. Mass. Sept. 22, 2011) ("courts have repeatedly held that a receptionist does not ordinarily

---

[7] For foreign corporations such as Lineage, Mass. Gen. Laws ch. 156D, § 15.10 also permits substitute service via registered mail to the corporation's out-of-state address, coordinated through the Secretary of the Commonwealth of Massachusetts. Costas did not attempt to serve Lineage in this manner.

qualify as a corporation's agent"); *Lott v. KForce, Inc.*, No. 18-cv-12182-MBB, 2019 WL 3573154, at *3-4 (D. Mass. Aug. 6, 2019) (concluding that delivering process to unauthorized, low-level employees or administrative staff is generally insufficient).

Costas has provided no evidence to demonstrate that the warehouse receptionist it served possessed any executive authority or was legally authorized to accept service for Lineage. Meanwhile, Lineage submitted a declaration from a Corporate Legal Specialist, who stated that the warehouse receptionist is neither a member of Lineage Logistics LLC, nor an officer, director, or managing individual, and has never been designated as an agent for service of process in any jurisdiction. *See* Docket No. 30-3. And "[u]nder Massachusetts law, an affidavit is sufficient to refute the prima facie presumption created by a return of service … Similarly, federal courts have held that an affidavit denying agency, standing alone, may be sufficient to overcome the presumption of proper service created by the return of service." *Blair*, 522 F.3d at 112 (citations omitted).

Because Costas failed to comply with the clear directives of Rule 4(h), and there was no proper substitute service under Massachusetts or Texas law, service of process was procedurally defective. These service defects alone warrant dismissal under Fed. R. Civ. P. 12(b)(5). Because insufficient service of process is a curable defect, however, I alternatively address Lineage's personal jurisdiction arguments.

### *2. Lack of Personal Jurisdiction*

"A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (citation omitted). General jurisdiction exists when a defendant's affiliations with the forum state are so continuous and systematic as to render it essentially at

home in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 138-139 (2014). An entity is generally only subject to general jurisdiction where it is incorporated or has its principal place of business. *See, e.g.*, *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 206 (D. Mass. 2019). Lineage is a limited liability company organized in Delaware with its principal place of business in Novi, Michigan. Docket No. 30-3 ¶¶ 3-4; Docket No. 30-5. Costas' reliance on Lineage and/or its corporate affiliates' Massachusetts cold storage warehouses and business registration misapprehends the "at home" standard. The Supreme Court has explicitly rejected the argument that a corporation is subject to general jurisdiction *anywhere* it engages in substantial, continuous business or operates local facilities. *Daimler*, 571 U.S. at 138-139. The presence of distinct corporate affiliates in Massachusetts does not automatically subject an out-of-state company to general jurisdiction. Because Lineage is not incorporated or headquartered in Massachusetts, and this case presents no exceptional circumstances, general jurisdiction does not lie in this district.

In the absence of general jurisdiction, specific jurisdiction must exist to support the Court's authority over Lineage. *See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). In assessing its jurisdiction over a non-resident defendant, a federal court sitting in diversity jurisdiction "act[s] as the functional equivalent of a state court sitting in the forum state." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 95 (1st Cir. 2024) (quotation marks omitted). Thus, to establish specific jurisdiction, Costas must satisfy a two-part inquiry: first, the assertion of jurisdiction must be authorized by the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A § 3, and second, the exercise of jurisdiction must comport with constitutional due process requirements. *SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50, 54-56 (Mass. 2017).

**i. Massachusetts Long-Arm Statute**

Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" one of seven enumerated categories of activity. Mass. Gen. Laws ch. 223A § 3. Even where a party presents jurisdictional facts that might survive constitutional due process scrutiny, the Court must decline jurisdiction if the plaintiff fails to establish a statutory prerequisite under Section 3. *See High Expectations LLC v. KPCA Nw. Presbyterian Theological Seminary*, 1:24-cv-11225-IT, 2025 WL 2533676, at *3 (D. Mass. Sept. 3, 2025).

Costas does not address the Massachusetts long-arm statute but argues generally that this Court has jurisdiction over Lineage because Lineage has "established with the Massachusetts Division of Corporations apparently four *affiliated* companies identified by similar name all doing business with the purpose of 'cold storage warehouse.'" Docket No. 47 at 5 (emphasis added). Moreover, Costas argues that based on Lineage's website, it appears that Lineage or its affiliates maintain multiple cold storage warehouse locations throughout Massachusetts. *Id*. Reading these arguments generously, the only provisions of the long-arm statute that Costas could plausibly invoke would be sections "(a) transacting any business in this commonwealth," "(b) contracting to supply services or things in this commonwealth," or "(e) having an interest in, using or possessing real property in this commonwealth." Mass. Gen. Laws ch. 223A § 3. For the following reasons, however, none of these sections apply.

The actions giving rise to this lawsuit did not stem from Lineage "transacting any business in this commonwealth" or "contracting to supply services or things in this commonwealth." Mass. Gen. Laws ch. 223A § 3(a), (b). Lineage has proffered the uncontested fact that it had no control over the ultimate destination for the steak and did not direct it to be

delivered to Massachusetts. Docket No. 30-1 at 1. Moreover, it is uncontested that Lineage did not have a business relationship with Costas, the only Massachusetts registered corporation in the string of entities involved in the transportation of the steak. *Id*. Costas does not assert that Lineage's alleged Massachusetts cold storage locations were related to the transaction at hand—that the steaks were ever stored in, or even destined for, Lineage's Massachusetts cold storage locations. Thus, there is no allegation that this action "arises from" Lineage "having an interest in, using or possessing real property in this commonwealth." Mass. Gen. Laws ch. 223A § 3(e). In short, the mere fact that separate Lineage entities or its corporate affiliates may operate unrelated warehouses in Massachusetts does not establish a statutory hook for a dispute arising out of actions that occurred exclusively in Texas. And because Costas' claim does not arise from any statutory transaction or act within the Commonwealth, the long-arm statute is not satisfied.

**ii. Constitutional Due Process Requirements**

Even if Costas could clear the statutory hurdle, this Court's exercise of jurisdiction over Lineage would violate the Due Process Clause of the Fourteenth Amendment. Under the constitutional prong, a nonresident defendant must possess minimum contacts with the forum, such that the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This requires the plaintiff to demonstrate that (1) the underlying claim directly arises out of, or relates to, the defendant's forum-state activities; (2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state; and (3) the exercise of jurisdiction is reasonable. *See Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007).

The relatedness inquiry requires a plaintiff to show that the cause of action arises directly out of, or is related to, the defendant's forum-based contacts, and rejects jurisdiction based on

attenuated or indirect contact. *Harlow v. Children's Hosp.*, 432 F.3d 50, 60-61 (1st Cir. 2005). The defendant's in-state conduct must form an important or material element of proof in the plaintiff's case. *Id*. at 61. Registering to do business in Massachusetts does not subject a defendant to specific personal jurisdiction for claims arising from activities conducted entirely out of the Commonwealth or unrelated to the claims of the lawsuit. *See, e.g., Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*, 54 N.E.3d 570, 575-76 (Mass. App. Ct. 2016) (rejecting specific personal jurisdiction where the defendant was registered in, and maintained over 175 employees in, Massachusetts, but those contacts did not relate sufficiently to the claim giving rise to the lawsuit). And here, it is uncontested that it is only Lineage's affiliates that are registered to do business in Massachusetts—not the entity that took the actions allegedly giving rise to this lawsuit.

The core of this dispute concerns cold storage performance and a loss of inventory occurring entirely in Texas. Docket No. 1 ¶¶ 3, 9, 12, 14. Lineage has no contacts with Massachusetts arising out of or relating to Costas' claims. The complaint indicates that Lineage stored the steaks at its Sunnyvale, Texas facility, and the steaks were lost or stolen either at that location or shortly after leaving that location. Docket No. 1 ¶¶ 3, 9, 12, 14. The record lacks any allegation by Costas that Lineage directed activities concerning the steaks at Massachusetts. *Compare* Docket No. 30-1 *with* Docket No. 47 at 5. The mere fact that Lineage or its affiliates *may* operate separate, unrelated warehouses in Massachusetts, or that Lineage *may* have affiliate entities registered in Massachusetts does not create a legal nexus to a dispute arising out of actions that occurred in Texas.

Costas also fails to establish purposeful availment, which requires showing that Lineage's contacts proximately resulted from actions taken by the defendant itself, rather than the unilateral

actions of another party. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The contacts must be of a nature that the defendant could "reasonably anticipate being haled into court" in the forum state. *Adelson*, 510 F.3d at 50 (citation omitted). Crucially, the First Circuit has emphasized that purposeful availment requires active, targeted commercial exploitation directed deliberately into the forum state, rather than passive involvement with a state's consumers. *See Stokinger v. Armslist, LLC*, 166 F.4th 229, 239 (1st Cir. 2026) (contrasting a high volume of deliberate forum marketplace interactions with passive exposure).

Here, any connection between Lineage and the Commonwealth of Massachusetts was indirect, stemming from the unilateral contract for the sale of product between John Soules Meat and Costas, and Costas' retention of an out-of-state shipping broker who "placed" the shipping contract with Lineage. Docket No. 1 ¶¶ 8-11, Docket No. 30-1 ¶¶ 3-8. Lineage's mere awareness that the stream of commerce would sweep the product into Massachusetts does not convert its passive role providing cold storage in Texas into an act purposefully directed toward this forum. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112 (1987); *Knox v. MetalForming, Inc.*, 914 F.3d 685, 691-694 (1st Cir. 2019); *D.S. Brown Company v. White-Schiavone,* 537 F. Supp. 3d 36, 44 (D. Mass. 2021).

Finally, because Costas fails to establish relatedness or purposeful availment, the equity factors of the reasonableness prong (referred to as the "gestalt factors" by the First Circuit) need not be extensively balanced. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994). The weaker a plaintiff's showing on the first two prongs, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. *Id.* at 210. Forcing a Michigan-headquartered company incorporated in Delaware to defend a Texas-based loss in Massachusetts, simply

because the plaintiff resides here, imposes a disproportionate burden that offends traditional notions of fair play and substantial justice.

Because Costas fails to satisfy both the statutory and constitutional prerequisites, this Court lacks personal jurisdiction. Accordingly, I recommend that the District Judge GRANT Lineage's Motion to Dismiss based on insufficient service of process and lack of personal jurisdiction and DISMISS the claims against Lineage without prejudice.[8]

### B. Fast Freight's Motion to Dismiss (Docket No. 37)

Fast Freight moves to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and improper venue under Fed. R. Civ. P. 12(b)(3). Docket No. 37. I turn first to the threshold procedural challenges.

#### *1. Lack of Personal Jurisdiction*

As an initial matter, this Court lacks general jurisdiction over Fast Freight. Fast Freight is a Pennsylvania-based freight forwarder and motor carrier. Docket No. 1 ¶ 5. While Costas highlights that Fast Freight acknowledges the existence of federal subject-matter jurisdiction via

---

[8] These threshold procedural defects completely dispose of the claims against Lineage, and thus I need not reach Lineage's alternative arguments regarding improper venue and failure to state a claim. Nonetheless, I note that even if Costas' service upon the warehouse receptionist could be cured, and personal jurisdiction could be established in the District of Massachusetts, the claims against Lineage would likely still face transfer based on improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391(b). Lineage is an out-of-state entity, and the complaint explicitly alleges that all relevant acts, omissions, and cargo losses occurred entirely within the state of Texas at Lineage's facility and/or after the steaks left Lineage's facility. Docket No. 1, ¶¶ 3, 9, 17, 27. Costas' Carmack Amendment claims are subject to the statute's venue provision, which states that an action may be brought against a carrier alleged to have caused the loss or damage in the judicial district in which such loss or damage is alleged to have occurred. 49 U.S.C. § 14706(a)(1). Because no part of the events giving rise to this lawsuit occurred in Massachusetts, venue is improper in this district both under the Carmack Amendment's venue provisions and 28 U.S.C. § 1391(b).

diversity of citizenship, a court's competence to hear a type of claim does not automatically confer personal authority over an out-of-state defendant. *See Guzman v. Ortez*, No. 22-cv-11619-PBS, 2023 WL 2988628, at *3 (D. Mass. Jan. 13, 2023) ("[T]he existence of diversity jurisdiction does not negate the requirement that the [C]ourt also have personal jurisdiction over a defendant."). Because Fast Freight is not "at home" in the Commonwealth, general jurisdiction is lacking. *See Daimler*, 571 U.S. at 138–39; *TargetSmart*, 366 F. Supp. 3d at 206.

Nor is there specific jurisdiction, as Costas cannot satisfy the standards of the Massachusetts Long-arm statute or constitutional due process.

**i. Massachusetts Long-Arm Statute**

Costas does not address Mass. Gen. Laws ch. 223A § 3 directly but argues that specific jurisdiction is appropriate because Fast Freight was a named carrier on shipping documents indicating an agreement to deliver the cargo to "New England Cold Storage" in Massachusetts. Docket No. 56 at 7. However, isolated transactions, ministerial contacts, or passive involvement with an out-of-state shipping destination do not constitute "transacting business" or "contracting to supply services or things" within the Commonwealth under Section 3(a) or (b). *See New Hampshire Ins. Gaur. Ass'n v. Markem Corp.*, 676 N.E.2d 809, 812-13 (Mass. 1997); *Droukas v. Divers Training Acad., Inc.*, 376 N.E.2d 548, 551-552 (Mass. 1978); *Reagent Fund II, LP v. Lotus Gunworks of S. Fla., LLC*, 687 F. Supp. 3d 169, 174-75 (D. Mass. 2023).

Here, Fast Freight's uncontradicted affidavit confirms it had no actual involvement in, contract regarding, or physical possession of either shipment. Docket No. 37-1 at 2. Lineage or Coyote retained Fast Freight in Texas to act as a motor carrier for the cargo, which was subsequently lost or stolen while in transit exclusively within Texas. Docket No. 1 ¶¶ 11, 14, 17. Fast Freight did not contract with a Massachusetts entity, maintain a local office, or engage in

active statutory transactions within the Commonwealth. The single fact of an out-of-state delivery destination listed by third parties on a bill of lading does not establish that Fast Freight "acted directly or by an agent" within Massachusetts. Because the alleged breach and tort occurred entirely outside of Massachusetts and did not stem from any business transacted or services supplied locally by the defendant, Costas fails to satisfy the statute.

**ii. Constitutional Due Process**

Costas also cannot meet the standards of constitutional due process. While relatedness is a flexible standard requiring a "demonstrable nexus" to the forum, a plaintiff must still demonstrate that its cause of action arises directly out of, or relates to, the defendant's forum-based contacts. *Knox*, 914 F.3d at 690-91; *Harlow*, 432 F.3d at 60-61. The core of this dispute concerns cargo handling and an inventory loss that occurred entirely in Texas. Docket No. 1 ¶¶ 11, 14, 17. Because the operational performance and alleged loss occurred wholly outside of Massachusetts, Fast Freight's out-of-state conduct did not form an important or material element of proof inside this forum. *See Harlow*, 432 F.3d at 60-61.

Second, Costas fails to establish purposeful availment. A contract or a bill of lading destination alone cannot automatically establish minimum contacts in a plaintiff's home forum. *See Burger King*, 471 U.S. at 478. Purposeful availment requires active, targeted commercial exploitation directed deliberately into the forum state, rather than passive involvement with a state's consumers or shipping streams. *See Stokinge*r, 166 F.4th at 239. The single fact of a Massachusetts delivery address on a bill of lading does not demonstrate that Fast Freight voluntarily injected itself into the local economy or targeted its laws, particularly where there is no allegation that Fast Freight contracted directly with a Massachusetts entity or marketed

services there. *See Asahi*, 480 U.S. at 112; *Knox*, 914 F.3d at 691; *D.S. Brown Co.*, 537 F. Supp. 3d at 44.

Finally, because Costas fails to establish relatedness or purposeful availment, the gestalt factors need not be balanced in their entirety. *Ticketmaster*, 26 F.3d at 210. Forcing a Pennsylvania-based carrier to defend a Texas-based cargo loss in Massachusetts, simply because the plaintiff resides here, imposes a disproportionate burden that offends traditional notions of fair play and substantial justice. *See id. at 209-10*; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). It would require an out-of-state company to incur substantial costs investigating a localized Texas theft, whereas Massachusetts has a minimal interest in adjudicating an out-of-state cargo loss.

Because Costas fails to satisfy both the statutory and constitutional prerequisites, this Court lacks personal jurisdiction. Accordingly, I recommend that the District Judge GRANT Fast Freight's Motion to Dismiss based on lack of personal jurisdiction and DISMISS the claims against Fast Freight without prejudice.[9]

**C. Coyote's Motion to Dismiss (Docket No. 26)**

Unlike Lineage and Fast Freight, Coyote did not raise any procedural defenses. Therefore, I proceed directly to considering Coyote's arguments that Costas has failed to state a claim upon which relief may be granted.

***1. Failure to State a Claim Under Count I: Breach of the Carmack Amendment***

[9] Again, because the Court lacks personal jurisdiction over Fast Freight, I need not address Fast Freight's alternative arguments regarding improper venue and failure to state a claim. Nonetheless, this is likely the improper venue for Costas' action against Fast Freight. *See supra* note 8.

Coyote argues that Costas failed to state a Carmack Amendment claim because it does not allege sufficient facts to show that Coyote is a "motor carrier" or "freight forwarder" under the Carmack Amendment. The Carmack Amendment provides a cause of action against "motor carriers" and "freight forwarders" for interstate cargo loss or damage. 49 U.S.C. § 14706(a)(1)-(2); (d).[10] Congress explicitly excluded "brokers"—entities that merely sell, provide for, or arrange transportation—from carrier liability under the statute. *See* 49 U.S.C. § 13102(2). Thus, an intermediary broker that merely arranges for a shipment or transportation cannot be held liable under the Carmack Amendment. *See Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*, 425 F. Supp. 3d 57, 61 (2019) (D. Mass. 2019) (parsing the broker-carrier divide and stating that "whether a company is a broker or carrier is not determined by what the company labels itself, but by its relationship to the shipper") (cleaned up); *see also Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 594 F. Supp. 3d 276, 287-88 (D. Mass. 2022). The "key distinction between a broker and a motor carrier [is] whether the disputed party accepted legal responsibility to transport the shipment." *Woods Hole*, 594 F. Supp. 3d at 288 (quotation marks omitted) (emphasis in the original).

Costas' complaint expressly identifies Coyote as a "shipping broker" that "retained the services of ... motor carriers" to move the cargo. Docket No. 1 ¶¶ 2, 10, 11, 42. The complaint also refers to Coyote as a "freight forwarder" (Docket No. 1 ¶ 2) providing "shipping carrier

[10] The statute defines a "motor carrier" as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "freight forwarder" is defined as an entity that provides "transportation of property for compensation and in the ordinary course of its business (A) assembles and consolidates … shipments and performs or provides for break-bulk and distribution operations of the shipments; (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and (C) uses for any part of the transportation a carrier subject to jurisdiction under [the Carmack Amendment]." 49 U.S.C. § 13102(8). An entity must satisfy all three subsections to be classified as a freight forwarder. *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

services" (Docket No. 1 ¶ 26). The use of such terminology alone does not establish nor undermine Costas' claims under the Carmack Amendment. To survive a motion to dismiss, a complaint must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. Instead, courts must isolate and discard such bare legal conclusions, testing only the remaining well-pleaded factual allegations for plausibility. *Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

Stripped of these labels, the complaint lacks factual allegations that Coyote ever assumed physical or legal custody of the steaks, issued a bill of lading, or operated as a motor carrier. The complaint states that Costas retained Coyote's services "under contract to ship the steak," but does not clarify whether this was a contract for motor carrier or broker services, and Costas does not provide the contract as an exhibit to the complaint for the Court's consideration. Docket No. 1 ¶ 10. The complaint also states that Coyote "placed … [the] shipping contract with Co-Defendants Lineage … [who] later retained the services of Co-Defendants HH Trucking … and Fast Freight … as motor carriers for the shipments." *Id.* ¶ 11. As currently pled, the complaint's allegations establish Coyote's status as a broker who "outsource[d] its contractual responsibility," *see Woods Hole*, 594 F. Supp. 3d at 288, when it "placed… [the] shipping contract" with Lineage, who then retained two motor carriers (HH Trucking and Fast Freight) to actually transport the steak.[11] Docket No. 1 ¶ 11. Thus, the Carmack Amendment is inapplicable to Coyote as a matter of law. Accordingly, I recommend that the District Judge

[11] It is not clear from the face of the complaint whether Lineage or Coyote placed the contract with HH Trucking and Fast Freight; still, the analysis remains the same—the contractual responsibility was outsourced to two entities other than Coyote. *See supra* note 2.

DISMISS Count I against Coyote, without prejudice, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### *2. Failure to State a Claim Under Counts II and III: Negligence and Violation of the Doctrine of Good Faith and Fair Dealing*

Coyote argues that the Federal Aviation Administration Authorization Act (FAAAA) preempts Costas' state-law negligence and good faith claims because they arise entirely from Coyote's role in arranging the interstate transportation and subsequent loss of the steak cargo. As an initial matter, Costas addresses the FAAAA preemption argument by recharacterizing its state-law counts as targeting Coyote's "negligence in securing its shipping database, order systems, and tracking verifications." Docket No. 49 at 5. These database security and tracking system theories are absent from the complaint, however—the pleading alleges only that two truckloads of steak were lost or stolen while within the "care and custody" of the Defendants. Docket No. 1 ¶¶ 12, 14, 17. A plaintiff's complaint may not be amended, supplemented, or salvaged by factual theories or claims raised for the first time in an opposition brief. *See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005). Because these database security allegations do not appear in the complaint, I decline to consider them here and instead analyze preemption based on the actual cargo loss allegations pled in the complaint.

The FAAAA preempts state-law common law claims "related to a price, route, or service of any motor carrier … or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The First Circuit interprets the phrase "related to" expansively, holding that it encompasses any state law that has an explicit "connection with or reference to" a broker's logistical operations. *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 17-18 (1st Cir. 2014); *see also Rowe v. New Hampshire Motor Transport*

*Ass'n*, 552 U.S. 364, 370–71 (2008). Guided by this broad standard, this Court has repeatedly held that the FAAAA expressly preempts ordinary common-law negligence claims against a broker for missing, lost, or stolen property, because such claims directly regulate and penalize the core logistical and shipping services of the broker. *See Fahrenbach v. Green Planet Movers*, 682 F. Supp. 3d 109, 113 (D. Mass 2023) (collecting cases). The FAAAA's narrow statutory exception, which preserves state authority to regulate motor vehicle safety, does not save this claim. 49 U.S.C. § 14501(c)(2)(A). A claim seeking to recover the economic value of lost or stolen commercial steak cargo has no nexus to public road safety. *Cf. Montgomery v. Caribe Transport II, LLC*, 146 S.Ct. 1199, 1204-1205 (2026). Thus, Count II is expressly preempted, and I recommend that it be DISMISSED with prejudice.[12]

Count III is similarly preempted. In *Northwest, Inc. v. Ginsberg*, the Supreme Court ruled that under identical federal deregulation language in the FAAAA, an implied covenant of good faith and fair dealing claim is a state-imposed legal obligation rather than a voluntary contractual term. 572 U.S. 273, 284–87 (2014). Because the implied covenant operates as a matter of state common law to reshape or expand a broker's operational liabilities beyond explicit contractual commitments, it directly "relates to" the commercial services offered by the

[12] Even if Costas filed an amended complaint and successfully established that Coyote operated as a motor carrier or freight forwarder rather than a broker, the result for the state-law claims would remain unchanged. Under well-settled First Circuit precedent, the Carmack Amendment preempts all state-law negligence and common-law contract claims arising from the loss or damage of goods during interstate transit. *See Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997) (holding that the Carmack Amendment preempts state-law claims premised on the loss of cargo). Because Costas' negligence and good faith claims are legally barred regardless of whether Coyote is classified as a broker (under the FAAAA) or a carrier (under the Carmack Amendment), any attempt to amend the complaint as to these claims would be futile. Accordingly, I am recommending dismissal of Counts II and III with prejudice.

broker. Therefore, Count III constitutes an impermissible state-law intrusion into a federally deregulated marketplace, and I recommend that Count III be DISMISSED with prejudice.

## V. RECOMMENDATION

For the reasons explained above, I recommend that the District Judge:

1. GRANT Defendant Lineage Logistics, LLC's motion to dismiss (Docket No. 29) under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(5) for lack of personal jurisdiction and insufficient service of process, and DISMISS all claims against Lineage Logistics, LLC, without prejudice;

2. GRANT Defendant Fast Freight Solutions LLC's motion to dismiss (Docket No. 37) under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and DISMISS all claims against Fast Freight Solutions LLC, without prejudice; and

3. GRANT Defendant Coyote Logistics, LLC's motion to dismiss (Docket No. 26) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and DISMISS Count I against Coyote Logistics, LLC, without prejudice, and DISMISS Count II and III against Coyote Logistics, LLC with prejudice.

SO ORDERED.[13]

Dated: August 18, 2026

/s/ Jessica D. Hedges
United States Magistrate Judge

[13] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) and Rule 3 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.